CLARE E. CONNORS #7936
United States Attorney
District of Hawaii

SYDNEY SPECTOR #11232
Assistant U.S. Attorney
Room 6-100, PJKK Federal Building
300 Ala Moana Boulevard
Honolulu, Hawaii  96850
Telephone: (808) 541-2850
Facsimile: (808) 541-3752
Email: Sydney.Spector@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>$2,606,046.54 SEIZED FROM MIDFLORIDA CREDIT UNION BUSINESS CHECKING ACCOUNT ENDING IN 7000, HELD IN THE NAME OF SUBSIDIARY TRADING JR LLC,<br><br>Defendant *in Rem*. | Civil No.<br><br>COMPLAINT FOR FORFEITURE; VERIFICATION OF ALEX MAH |

COMPLAINT FOR FORFEITURE

Plaintiff United States of America, by its undersigned attorneys, brings this Complaint for Forfeiture and alleges as follows in accordance with Rule G(2) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, Federal Rules of Civil Procedure:

## NATURE OF THE ACTION

1.     This is a civil action *in rem* to forfeit and condemn to the use and benefit of the United States the above-captioned property, as property which constitutes or is derived from proceeds traceable to a violation of any offense constituting a specified unlawful activity as defined in 18 U.S.C. § 1956(c)(7), including wire fraud in violation of 18 U.S.C. § 1343, and subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C).

2.     For its claims against the above-captioned property, the United States alleges as follows upon information and belief.

## THE DEFENDANT *IN REM*

3.     The above-captioned property includes all right title and interest in the $2,606,046.54 seized on or about March 28, 2024 from MIDFLORIDA Credit Union Business Checking account ending in 7000, held in the name of Subsidiary Trading JR, LLC (the "Defendant Property").

JURISDICTION AND VENUE

4.      Plaintiff brings this action *in rem* in its own right to forfeit and condemn the Defendant Property.  This Court has subject matter jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345, and over an action for forfeiture under 28 U.S.C. § 1355(a).

5.      This Court has *in rem* jurisdiction over the Defendant Property under 28 U.S.C. § 1355(b)(1).

6.      Venue is proper in this district pursuant to 28 U.S.C. § 1355(b)(1) because the acts or omissions giving rise to the forfeiture occurred in this District and, pursuant to 28 U.S.C. § 1395 because the Defendant Property is located in this District.

BASIS FOR FORFEITURE

7.      The Defendant Property is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C), as property, real or personal, which constitutes or is derived from proceeds traceable to a violation of any offense constituting "specified unlawful activity" (as defined in 18 U.S.C. § 1956(c)(7)), or a conspiracy to commit such offense, is subject to forfeiture to the United States.  Pursuant to 18 U.S.C. § 1956(c)(7) and 18 U.S.C. § 1961(1), wire fraud in violation of 18 U.S.C. § 1343 is a specified unlawful activity within the meaning of 18 U.S.C. § 981(a)(1)(C).

3

FACTS GIVING RISE TO FORFEITURE

8.      On or around January 30, 2024, the Federal Bureau of Investigation received a report that Company #1, based in Honolulu, Hawaii, was the victim of a business email compromise ("BEC") scam whereby unknown malicious actors, using an email address intended to spoof Company #1's outside counsel, sent an email to a Company #1 representative to provide false wiring instructions for Company #1's funds.  A Company #1 representative who received the spoofed email believed that the wire instructions were actually from Company #1's outside counsel, so the representative executed the wire as instructed, which resulted in an $8,328,651 dollar wire to be sent, on or about December 22, 2023, from Company #1's account at First Hawaiian Bank, to an account at Regions Bank, account ending in 5759 ("RB5759").

9.      RB5759 was associated with a business entity, "Subsidiary Trading Jr LLC," a Florida entity registered to Jonathan Ryall Patton, in or around October 2023.

10.     Bank records for RB5759 show that prior to the $8,328,651.00 deposit from Company #1, RB5759 had a balance of $59.23.  Numerous outgoing wires and checks were subsequently issued from RB5759, including several checks issued to "Jonathan Patton" totaling approximately $4,403,000 which were deposited into accounts at Heartland National Bank.  By on or around January 24,

2024, 33 days after the wire from Company #1, RB5759 was closed and had a zero balance.

11.    In February 2024, Patton was interviewed by law enforcement.  Patton stated that he set up "Subsidiary Trading Jr LLC" in his own name at the direction of a woman known to him as "Mahalina Mclaurin," who he met on an online dating site in early 2023.  Mclaurin, who allegedly lives in the Philippines, told Patton he would be receiving the money, and instructed him to take some of the funds and send cashier's checks by certified mail to certain individuals.  Mclaurin told Patton that she has a business renting luxury cars, that she is the middle man between the renters and the rental company, and that she wanted to start her own business and bring her clientele with her.  By sending funds to various people using the over $8 million deposited into RB5759 from Company #1, Patton thought that he was helping Mclaurin "buy cars."[1]  At some point, Regions Bank refused to do further business with Patton and closed RB5759.  Patton stated that he subsequently sent money from RB5759, via a bank check, to a Heartland National Bank ("HNB") account, then a Crews Bank and Trust ("CB&T") account, and finally the instant MIDFLORIDA Credit Union Business Checking account ending in 7000, held in the name of Subsidiary Trading JR, LLC ("MF7000").

---

[1] Company #1 has no relation to the car or car rental industry.

12.     Bank records for MF7000 show that the account was opened, on or

around January 16, 2024, with a deposit of $1,084,947.01 from a cashier's check

drawn from HNB payable to Subsidiary Trading Jr LLC, with the notation "HNB

CLOSED ACCOUNT 2284".  The only other substantive deposit to the account

was another cashier's check in the amount of $1,753,399.53 drawn from CB&T

with the notation "CLOSE ACCT," deposited on or around February 9, 2024.  The

closed CB&T account was funded entirely by a $1,865,546.03 cashier's check

drawn from HNB payable to Jonathan Ryall Patton with the notation "HNB

CLOSED ACCOUNT 7994".  As noted in paragraph 10 above, Patton deposited

approximately $4,403,000 to HNB accounts upon receipt of the initial wire from

Company #1.

13.     As of March 20, 2024, the balance of MF7000 was $2,606,046.54, the

entirety of which was derived from funds fraudulently obtained from Company #1.

14.     On or around March 7, 2024, Patton informed law enforcement that

he does not currently have control of any of the remaining funds from the initial

wire from Company #1, and expressed a desire to fully cooperate with law

enforcement.

15.     The quick and multi-layered transfer of funds fraudulently obtained

using a spoofed email address is a common practice in this type of BEC scheme.

The malicious actor(s)/fraudster(s) behind the BEC scheme try to move and

disperse the money before it can be traced and/or recovered.  Based on information and belief, Patton and others–such as those that Patton was told to send money to—likely served as money mules to move the fraudulently obtained funds. Money mules in these types of fraud schemes are individuals who transfer illegally acquired money on behalf of or at the direction of another. Criminals recruit money mules to move money electronically through bank accounts, in person, or through a variety of methods.  Once received, the mule may wire the money into a third-party bank account; "cash out" the money received, possibly via several cashier's checks, convert the money into a virtual currency, or conduct a combination of these actions.  Subsidiary Trading Jr LLC had no legitimate business purpose and was used only to move fraudulently obtained funds as set forth above.

16.    On or about March 28, 2024, Magistrate Judge Rom A. Trader approved a seizure warrant, authorizing the seizure of all funds in MF7000, on the grounds that there was probable cause to believe that the entire contents of MF7000 was proceeds of wire fraud, or traceable thereto.  The execution of the seizure warrant on the same day resulted in the seizure of $2,606,046.54 – the Defendant Property.

## FIRST CLAIM FOR RELIEF
### (18 U.S.C. § 981(a)(1)(C))

17.     The United States incorporates by reference the allegations set forth in Paragraphs 1 through 16 above, as if fully set forth herein.

18.     The Defendant Property is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) as property which constitutes or is derived from proceeds traceable to a violation of any offense constituting "specified unlawful activity" or a conspiracy to commit such offense.  Specifically, the Defendant Property constitutes proceeds of wire fraud in violation of 18 U.S.C. § 1343—the proceeds of the BEC scheme committed against Company #1.

19.     Pursuant to 18 U.S.C. § 984, it is not a defense that the property involved in an offense that is the basis for forfeiture has been removed from an account in a financial institution and replaced by identical property; the government need not identify the specific property involved in the offense that is the basis for forfeiture; and any identical property found in the same financial account as the property involved in the offense that is the basis for forfeiture is subject to forfeiture; as long as the action to forfeit property not traceable to the offense that is the basis for forfeiture is commenced within one year from the date of the offense.

WHEREFORE, the United States prays that:

1.      Notice of this action be given to all persons who reasonably appear to be potential claimants of interests in the Defendant Property;

2.      The Defendant Property shall be forfeited and condemned to the United States of America;

3.      Plaintiff be awarded its costs and disbursements in this action; and

5.      The Court award such other and further relief as this Court deems just and proper.

DATED:  June 20, 2024, at Honolulu, Hawaii.

CLARE E. CONNORS
United States Attorney
District of Hawaii

/s/ Sydney Spector
By _____
SYDNEY SPECTOR
Assistant U.S. Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA